IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, for the | ) | |
| use and benefit of M. L. YOUNG | ) | |
| CONSTRUCTION CORP., | ) | |
| | ) | |
| Plaintiff and Counterdefendant, | ) | |
| | ) | |
| vs. | ) | NO. CIV-04-0078-T |
| | ) | |
| THE AUSTIN COMPANY, | ) | |
| | ) | |
| Defendant and Counterclaimant, | ) | |

ORDER

Before the court is the motion [Doc. No. 39] and supporting brief [Doc. No. 40] of defendant The

Austin Company ("Austin")[1] for partial summary judgment on plaintiff's claims.  Plaintiff timely responded

to the motion.

The claims and counterclaims in this action relate to a contract  awarded by the United States

Corps of Engineers ("Corps of Engineers") for the construction of a Depot Corrosion Control Strip Facility

at Tinker Air Force Base, Oklahoma.  Austin was awarded the contract and, subsequently, entered into

three subcontracts with M. L. Young Construction Company ("Young") whereby Young would perform

demolition, site clearing, earthwork and storm drainage work on the project.

Young brought this action to recover damages based on amounts which it claims are due and owing

to it as a result of the work performed pursuant to the subcontracts.    Young alleges, *inter alia,* that it is

entitled to recover increased costs it incurred as a result of Austin's actions as contractor.  According to

---

[1] *Although the motion was initially filed by defendants The Austin Company and Seaboard Surety Company, the parties filed a stipulation of dismissal in which the claims against Seaboard Surety Company were dismissed; pursuant to the dismissal, the only remaining defendant is The Austin Company.*

Young, it incurred excessive costs because: 1) Austin required it to include an incorrect sales tax rate in its bids; 2) the prevailing wage rates which Austin represented as in compliance with the Davis-Bacon Act were too low, and Young was required to pay higher wages than specified in the subcontracts; and 3) completion of the work was delayed because of Austin's conduct and/or unexpected occurrences beyond Young's control.

Austin denies that Young is entitled to any recovery, and it asserts a counterclaim in which it seeks damages for added contract costs which it contends were caused by Young. It alleges that it was required to pay for certain work which Young did not perform, although it was required to do so under the subcontract terms; Austin also contends that Young caused project delays which increased costs. Austin further alleges the government required it to pay the difference between the wage rates initially provided in the subcontracts and the prevailing rate required by the Davis-Bacon Act. It seeks reimbursement from Young for the amount Austin paid.

Austin's summary judgment motion seeks a ruling that, pursuant to the undisputed material facts in the record, it is entitled to judgment on Young's claims based on performance delays because same are not permitted by the terms of the subcontracts. Austin further argues that it is not responsible for the errors in the sales tax rate or the Davis-Bacon wage rate reflected in the subcontracts.

Summary judgment may be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). To avoid summary judgment, plaintiffs must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury

could return a verdict for the non-moving party." *Id.*   The facts in the record and reasonable inferences

therefrom must be viewed in the light most favorable to the nonmoving party.  <u>Simms v. State of Oklahoma</u>,

165 F3d 1321, 1326 (10th Cir. 1999); <u>Tomsic v. State Farm Mut. Auto. Ins. Co.</u>, 85 F.3d 1472, 1476

(10th Cir. 1996).   Where the undisputed facts establish that a plaintiff cannot prove an essential element

of a cause of action, defendant is entitled to judgment on that cause of action.  <u>Celotex</u>, 477 U.S. at 322.


In this case, it is not disputed that the parties  executed  three separate subcontracts for the work

to be performed by Young and that the general terms of the subcontracts at issue here are the same.  The

parties also agree that the costs included in Young's bids were based in part on the  state and local sales

taxes which would be charged for the materials it purchased to perform the work.  It is also undisputed that,

because the work was performed pursuant to a government contract, the parties were required to comply

with the Davis-Bacon Act by paying wage rates according to the prevailing hourly wage for comparable

work in the area.

Young's claim for costs attributable to sales taxes is based on the contention that Austin required

Young to utilize a sales tax rate which was lower than the actual rate.  According to Young,  it proposed

a specific sales tax rate in its bids, but Austin required it to lower that rate and represented to Young that

the rate required by Austin was correct.  The rate was incorrect; as a result, Young's project costs were

increased because it had to pay the higher sales taxes.   Similarly, Young alleges that  Austin provided

incorrect prevailing wage rates required by Davis-Bacon and that, after  work began, Young learned the

wage rates were too low.  It paid the accurate rate for the balance of the subcontract work, thereby again

increasing its costs.  In addition, Young alleges that its costs were increased above its bid amounts because

it encountered unforeseen catastrophic events which delayed the projects and required additional work; it also argues that Austin caused additional delays by demanding changes in the performance schedule and the agreed plan for completing the work.        In its motion for summary judgment, Austin argues that Young cannot collect the amounts attributable to incorrect sales tax rates or wage rates.  Austin contends that, pursuant to the terms of the subcontracts, Young as  the subcontractor is obligated to pay these amounts and, further, the subcontracts expressly provided for a sales tax rate and expressly listed the wage rates that would be paid to various categories of employees.   Because Young agreed to these terms when it executed the subcontracts, Austin argues, Young cannot alter those terms after performance of the work.

   Austin also contends that the terms of the subcontracts preclude Young's recovery on its claims based on Austin's alleged interference and related occurrences.

        The Davis-Bacon Act, 40 U.S.C. § 276a, was enacted to protect local wage standards by requiring contractors and subcontractors in federal construction contracts to pay their workers the prevailing wage in the area where the contract is to be performed.  *See* Westchester Fire Insurance Co. v. United States, 52 Fed. Cl. 567, 580 (Ct. Cl. 2002), *citing* Universities Research Ass'n. v. Coutu, 450 U.S. 754, 773 (1981).  The Act requires that federal construction contracts contain a stipulation that, if less than the prevailing wage rate is paid, the contracting federal agency may withhold "from the contractor so much of the accrued payments as may be considered necessary by the contracting officer to pay...the difference between the rates of wages required by the contract...and the rates of wages received...." 40 U.S.C. § 276a(a).  Thus, if it is determined that workers were paid less than the prevailing wage rate, the contractor is statutorily liable to pay the amount attributable to the deficiency in wage rates.

        According to the undisputed facts submitted by the parties, when less than the prevailing wage rate

was paid on the subcontracts at issue in this case, Austin was required by the Corps of Engineers to pay the deficiency in the amount of $15,031.45.   The record also reflects, however, that the accurate prevailing wage rate was partially paid by Young.   Austin does not dispute that, when Young learned during the project that the prevailing wage rates were too low, it adjusted the wages paid to comply with Davis-Bacon.   According to Young, doing so increased its subcontract costs by an unspecified amount[2].

Austin contends in its motion that Young cannot recover any amount related to wages because it was obligated by the subcontracts to pay the Davis-Bacon prevailing wage rate and, further, that Austin is entitled to recover from Young the deficiency that Austin was required to pay.

Young acknowledges that, although it initially paid wage rates below the Davis-Bacon requirements, it based those rates on information provided by Austin and represented to be accurate.

Neither party submits authority supporting its respective position within the scope of decisions involving Davis-Bacon.    The parties do not submit authority regarding the duties and obligations of a contractor and subcontractor regarding the accuracy of information about prevailing wage rates.   Austin implies that the accuracy of the information it provided was irrelevant because Young could have obtained the accurate wage rates elsewhere, as the rates are "publicly available from the Department of Labor." Austin's brief, p. 10; affidavit of William T. Lockwood, manager of purchasing for Austin, defendant's Ex. 1, ¶13.   Austin's argument implies that it had no obligation to insure the accuracy of the prevailing wage rates it provided to Young; however, it submits no legal authority to support such argument.   Further,

---

[2]*Young's request for money damages combines the damages attributable to wages with that based on the allegedly inaccurate sales tax rates. In its brief, Young does not specify the exact amount it claims is attributable only to the wage rate increase it paid.*

William Lockwood testified in his deposition that he transmitted the prevailing wage rates to Young prior to the execution of the subcontracts and expected Young to rely on those rates. William Lockwood dep., plaintiff's Ex. E, page 47, lines 1-25.

The contractor is "responsible for the compliance by any subcontractor" with the Davis-Bacon Act. 29 C. F. R. § 5.5 (a)(6). However, decisions located by the court indicate that, where the contractor is required to pay a Davis-Bacon Act wage deficiency owed to its subcontractor's employees, it may seek reimbursement from the subcontractor, under applicable state law, if the subcontract sufficiently places the obligation of compliance on the subcontractor. *See, e.g.,* National Fire Insurance Co. of Hartford v. Fortune Construction Co., 320 F.3d 1260, 1277, n 21 (11th Cir. 2003); Dorey Elec. Co. v. Pittman Mechanical Contractors, Inc., 789 F.Supp. 734, 739 (E. D. Va..1992).

In this case, Austin presumably contends that the subcontracts adequately placed the responsibility for compliance upon Young, as it seeks a state law remedy of damages to reimburse Austin for the wage deficiencies it paid. Young cites no authority to the contrary, but instead argues that, as a matter of general contract law, it was entitled to rely on the accuracy of the information provided by Austin. Thus, the parties' arguments as submitted raise are several questions, including whether Young was entitled to rely on the purported accuracy of the wage rate information submitted by Austin, whether Austin knew Young relied on it for accurate information, and whether Young reasonably relied on the information provided by Austin to determine the correct rates to apply. Because these are factual questions disputed in the record, they cannot properly be adjudicated in a motion for summary judgment. Accordingly, Austin's motion is denied to the extent it seeks judgment on claims related to Davis-Bacon Act deficiencies.

Young's claim for damages based on inaccurate sales tax rates is similarly subject to factual

disputes.  According to Young, it initially submitted a bid in which costs included sales tax at a rate of 7.75%; however, it claims that Austin required it to lower that rate to 7.5%, thereby decreasing the costs associated with the subcontracts.  Young argues that it later determined that 7.75% was, in fact, the accurate rate.  *See* Affidavit of Michael L. Young, submitted as plaintiff's Ex. C, ¶ 4. Austin concedes that it required a rate of 7.5%.  Dep. of William  Lockwood, plaintiff's Ex. E, p., 32, lines 5-21.   William Lockwood, Austin's manager of projects, testified that, in his opinion, 7.5% was the current tax, and he conveyed that belief to Young.  *Id.,* lines 18-25; page 33, line 1.  Austin concedes, however, that such tax rate was incorrect; in fact, the correct rate was the 7.75% rate originally proposed by Young.

As Young points out, under general Oklahoma law, it is entitled to rely on the accuracy of representations made by Austin in preparing its bids.  *See, e.g.,* Miller v. City of Broken Arrow, 660 F.2d 450, 457 (10th Cir. 1981).   Austin's motion implies that, because the subcontracts contained the 7.5% rate, Young is bound by that rate and not entitled to recover damages even if that rate was inaccurate.

However,  Young takes the position that  Austin knowingly required Young to utilize an incorrect sales tax rate.   That contention is, of course, the subject of a factual dispute.    Whether Austin provided an inaccurate rate, whether it did so intentionally, and whether Young reasonably relied on the information provided by Austin are factual issues which cannot be resolved in a motion for summary judgment. Accordingly, Austin's motion on this issue is denied.

The final claim challenged by Austin is Young's claim for damages in excess of $350,000 for "delays and impacts" allegedly caused by Austin's conduct in "interfering with, obstructing and directing the means and methods of M.L. Young's performance of its written subcontracts." Complaint ¶ 16.  Austin argues that, under the terms of the subcontracts, such recovery is expressly excluded.

Each of the subcontracts contains a provision entitled, "General Conditions" which provides, in pertinent part that "The subcontractor shall not be entitled to an increase in the Subcontract Sum for delays except as set forth in Subparagraph 7.1.2."   Subcontract ¶ 7.1.5, defendant's Ex. 4, p. 00700-6. Subparagraph 7.1.2 provides as follows:

> By executing the Subcontract, the Subcontractor confirms that the Subcontract Time is a reasonable period for performing the Work.   The Subcontractor shall proceed expeditiously with adequate forces and shall achieve Final Completion within the Subcontract Time. **The Subcontractor shall meet the Subcontract Time and Austin's Schedule, and will not be given an increase in Austin's Schedule** or Subcontract Time for any reason, including but not limited to, weather, requirements of or adjustments in the Project, or delays in delivery of materials or equipment provided by the Subcontractor or assignment to the Subcontractor.   Time limits under the Subcontract Documents are of the essence and not subject to modification except for catastrophic, highly unusual and extensive conditions beyond the control of the Subcontractor.   Except for the preceding, the Subcontractor must provide any extraordinary means at its cost to meet such time limits.

Subcontract ¶ 7.1.2 (emphasis in original), defendant's Ex. 4, p. 00700-6.   Thus, the only "delay damages" which Young can collect are those caused by "catastrophic, highly unusual and extensive conditions beyond the control of the Subcontractor."   Austin argues that, because Young has not alleged any facts to support the occurrence of catastrophic, highly unusual and extensive conditions beyond Young's control, it cannot recover as a matter of law for delays.       As Austin points out, this circuit has held such provisions in constructions contracts as valid and enforceable.   *See* W. C. James, Inc. v. Phillips Petroleum Company, 485 F.2d 22, 25 (10th Cir. 1973).

Young contends that the delays it encountered satisfy Subcontract ¶ 7.1.2 because the occurrences causing delay were "catastrophic," "highly unusual," and beyond Young's control.   For example, Young argues, it encountered underground obstructions and contaminated soil which delayed completion of a

steam tunnel because of the need to perform tests for toxic substances and remove hazardous material. *See* Affidavit of Michael L. Young, ¶ ¶ 7, 9, submitted as plaintiff's Ex. C.   If Young proves this contention, it argues, then it would be entitled to recover damages for delay under the provisions of Subparagraph 7.1.2.

Young also argues that, even if the literal language of paragraph 7.1.2 is found inapplicable, courts have recognized exceptions to "no damages for delay" clauses in construction contracts where the party seeking to enforce such clause has engaged in inequitable conduct. *See*, *e.g.,* John E. Green Plumbing and Heating Company, Inc. v. Turner Construction Company, 742 F.2d 965, 966-67 (6th Cir. 1984).  Further, Young argues, this exception was recognized by the Tenth Circuit in W.C. James, although the court found no inequitable conduct had occurred in that case.  485 F.2d at 25.

Young argues that, in this case, such exception should apply because Austin engaged in inequitable conduct by allegedly interfering with Young's timely performance.  Although Young notes that Austin disputes this contention, it argues that this dispute precludes summary judgment on its claim for delay damages.

The court agrees.  The record before the court reflects correspondence between the parties which includes substantial disputes regarding the delays encountered and allegations of interference.  *See* correspondence included at plaintiff's Ex. D.  Although the court agrees with Young that the provisions of the subcontract at ¶ 7.1.2 severely limit the delays for which damages could be recovered, the record reflects a factual dispute as to whether the occurrences in this case would satisfy that paragraph.  Further, there are material fact disputes regarding the conduct of the parties during the performance of the

subcontracts[3].  To the extent that this circuit recognizes an exception to delay damages clauses where a party has engaged in inequitable conduct, the record before the court shows that there is a factual dispute concerning this issue.   Therefore, summary judgment is inappropriate and Austin's motion must be denied.

In accordance with the foregoing, the motion for partial summary judgment [Doc. Nos. 39 and 40] of defendant the Austin Company is DENIED, as the record reflects material fact disputes which preclude an award of judgment on these claims.

IT IS SO ORDERED this 28th day of September, 2005.

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE

---

[3]*The court notes that, in a motion in limine filed after the completion of summary judgment briefing, Austin seeks to exclude certain evidence regarding Young's claim that Austin caused delays because of alterations of the work schedule; that motion argues that such evidence is parol or extrinsic evidence which is inadmissible.   The court will address that motion in a separate order and has not referenced same in this order because the issue need not be decided in ruling on this motion.   Although plaintiff's response to the summary judgment motion references an allegation regarding the work schedule and Austin's purported changes to same, the court has not addressed that allegation in ruling on the summary judgment motion but has confined its ruling to the issues briefed by both parties in connection with the summary judgment motion.*