IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of M. L. YOUNG CONSTRUCTION CORP., <br><br> Plaintiff and Counterdefendant, <br><br> vs. <br><br> THE AUSTIN COMPANY, <br><br> Defendant and Counterclaimant, | ) ) ) ) ) ) ) ) NO. CIV-04-0078-T ) ) ) ) ) |

ORDER

Defendant has filed filed a motion in limine [Doc. No. 66] in which it seeks to exclude certain evidence from the trial of this matter. Specifically, defendant argues that plaintiff's evidence consists in part of oral negotiations prior to the execution of the written subcontracts involved in this case. Defendant contends that such evidence cannot be admitted to vary or contradict the terms of the written agreements executed by the parties and must be excluded.

The claims and counterclaims in this action relate to the construction of a Depot Corrosion Control Strip Facility at Tinker Air Force Base, Oklahoma. The United States Corps of Engineers ("Corps of Engineers") awarded the contract for the construction to defendant The Austin Company ("Austin"); subsequently, Austin entered into three subcontracts with plaintiff M. L. Young Construction Company ("Young"). Pursuant to the terms of the subcontracts, Young would perform demolition, site clearing, earthwork, and storm drainage work on the project.

Among the issues raised by Young's claims and Austin's counterclaim is the delay in completing the project. Young contends that it incurred increased costs because of Austin's failure to follow the project

schedule and its interference with Young's work. Austin contends that delays, and resulting cost increases, were caused by Young; it denies that it caused such delays.

In its motion, Austin specifically challenges evidence which it anticipates Young will seek to introduce in support of its contention that Austin caused delays in the subcontract work by altering the planned work schedule and by allowing other subcontractors to obstruct its work. Austin notes that Young stated in an interrogatory response that Young

> was advised when bidding the subcontracts of the following planned sequencing: demolition of the existing paving as needed to pour foundations; foundation work, erection of the steel hangar building; sheathing of the hangar; demolition of the remaining paving on the interior of the hangar; installation of industrial waste piping; and concrete work. M.L. Young was told that it would be allowed to perform demolition and concrete work on the interior of the hangar unobstructed by other subcontractors.

Plaintiff's responses to defendant's First Set of Interrogatories, at 4. Austin contends that Young cannot rely on these alleged oral representations which, it contends, vary the terms of the written subcontracts. Austin argues that the subcontracts contain specific provisions governing the work schedule and Austin's responsibilities with respect to subcontractors.

As Austin argues, under Oklahoma law, "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." 15 Okla.Stat. § 137. In interpreting contracts, courts must view the document as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others. National American Ins. Co. v. American Re-Insurance Co., 358 F.3d 736, 740 (10th Cir. 2004), *citing* Okla. Stat. Ann. tit. 15, § 157. As a general rule, evidence of oral negotiations or agreements prior to or concurrent with the contract's execution, known as parol or extrinsic evidence, is

inadmissible to vary the terms of the written agreement. First Natl. Bank in Durant v. Honey Creek Entertainment Corp., 54 P. 3d 100, 103 (Okla. 2002), *reh. denied.*

Oklahoma law also recognizes several exceptions to the parol evidence rule[1]. For example, extrinsic evidence is admissible where the contract is ambiguous; the determination of ambiguity is a question of law for the court. Pitco Energy v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla. 2003). Extrinsic or parol evidence is also admissible where a party to the contract alleges that he was induced to execute the contract because of false or fraudulent representations of fact, even when those representations directly contradict the contract provisions. First Natl. Bank in Durant, 54 P. 3d at 104 (citations omitted). Such evidence has also been admitted to show how the parties carried out the contract in actual performance, so long as the evidence did not contradict the terms of the written contract. American Crystal Sugar Co. v. Nicholas, 124 F.2d 477, 480 (10th Cir. 1941)(*citations omitted*).

In this case, Young argues that the evidence it intends to offer does not violate the parol evidence rule because the evidence is not inconsistent with the terms of the subcontracts executed by the parties. Young argues that Austin agreed to prevent other subcontractors from interfering with Young's completion of its subcontract work and that Austin failed to do so. According to Young, that agreement is not inconsistent with the terms of the subcontracts. Young also contends that the subcontracts do not address the planned phasing and sequencing of the work to be performed by Young within the completion deadline set forth in the subcontracts. According to Young, the planned phasing and sequencing was essential to its performance within the deadline for completion, and the phasing and sequencing were not set out in the subcontracts but

---

[1] All recognized exceptions are not discussed in this order, as the parties have neither referenced or argued some of the exceptions discussed in reported Oklahoma decisions.

in oral conversations and/or written information provided prior to and shortly after the subcontracts were executed. Young contends that, because the phasing and sequencing had to be determined in order to insure completion of the work, the parties' agreement regarding same is an essential component not expressly addressed in the subcontracts. Thus, Young argues, evidence of that agreement does not vary the terms of the written subcontracts and is thus admissible. In the alternative, Young contends that the evidence is admissible as an exception to the parol evidence rule because it supports Young's allegation that Austin misrepresented to Young the phasing and sequencing of the work to be performed and that Young relied on that misrepresentation to its detriment.

Austin contends that, contrary to Young's arguments, the subcontracts contain an express provision governing the work of other subcontractors, and any evidence of alleged oral agreements to the contrary are inadmissible.

Austin relies on the following contract provision:

> 5.1 The Subcontractor shall afford Austin and separate subcontractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities and shall connect and coordinate the subcontractor's construction and operations with Austin and separate subcontractors under the general direction of Austin.

Subcontract, General Conditions, at page 00700-5, ¶5.1. This paragraph clearly requires Young, as a subcontractor, to "afford Austin and separate subcontractors reasonable opportunity for introduction and storage" of materials and equipment as well performance of the other subcontractors' activities; it also provides that all subcontractors are under the general direction of Austin. Young, however, contends that Austin verbally agreed to insure that Young would be able to perform its work free of obstruction caused by other subcontractors. That agreement is not expressed in the subcontract. The provision of the subcontracts

regarding the work of various subcontractors gives Austin the authority to coordinate their work; by signing the subcontracts, Young agreed to abide by that provision. Although Young, as a subcontractor, agreed to coordinate its work with that of other subcontractors under the "general direction" of Austin.

Paragraph 5.1 of the subcontracts clearly addresses the responsibilities of Young and Austin, respectively, concerning other subcontractors. To the extent that Young seeks to introduce evidence that Austin orally agreed to take responsibility other than that specified in the subcontracts or evidence that Austin and Young had a different agreement regarding coordination and direction of the work of the subcontractors, such evidence would vary the specific terms of ¶ 5.1 and is thus inadmissible parol or extrinsic evidence. To the extent that Austin seeks to exclude such evidence on that basis, its motion in limine is granted. This ruling does not, of course, preclude the introduction of evidence designed to show that Austin failed to comply with ¶ 5.1 so long as that evidence does not involve an alleged oral agreement having terms different from that paragraph and the other terms of the subcontract.

With respect to Young's allegations regarding phasing and sequencing of the work, Austin argues that ¶ 1.l.4 precludes Young from introducing such evidence because Young's evidence of oral agreements would be contrary to that provisions. The paragraph provides:

> The Subcontractor represents and agrees that it has carefully examined and understands the Subcontract Documents; has investigated the nature, locality and site of the Work and the conditions and difficulties under which it is to be performed; and that it enters into this Subcontract on the basis of its own examination, investigation and evaluation of all such matters and not in reliance upon any opinions or representations of Austin, except as set forth in writing by Austin, of the Owner or of others.

Subcontract, General Conditions, ¶ 1.1.4. While this provision states that the subcontractor, Young, has independently investigated the "nature, locality and site" of the work and the "conditions and difficulties" under

which it is to be performed, the paragraph does not address phasing and sequencing of the work. Therefore, that paragraph, without more, does not support Austin's argument.

The court has examined the subcontracts in detail, and finds that the phrase "phasing and sequencing" is not included in any provision. However, the subcontract contains at least one reference to the "sequence" of the work to be performed. Subcontract, ¶3.2.2, page 0700-3. There are also several references to "Austin's schedule" or the "schedule." *See, e.g.,*; ¶ 3.7.1, page 0700-4; ¶ 6.3.1, page 0700-5; and ¶¶ 7.1.4, 7.1.7, page 0700-6. In addition, the parties amended ¶ 7.1.2 of the subcontract to add the phrase, "Austin to issue schedule." *See* "Amendment to Austin's General Conditions of this Subcontract Section 00700", amendment No. 4, unnumbered page of the Subcontract.

When reviewed in the context of the entire subcontract, the term "Austin's schedule" refers to the overall schedule for the entire contract. In fact, one section of the subcontract refers to the "Project Control Schedule" and defines it as "Austin's Schedule." Subcontract, ¶ 7.1.7, page 00700-6. Although the phrase "Austin's Schedule" appears several times in the subcontract before it is clear that it refers to the Project Control Schedule, an examination of the entire subcontract shows that Austin's schedule is the overall schedule for the entire project rather than the work applicable only to Young. As Young argues, however, there is no portion of the contract which sets out Austin's Schedule and, in fact, the amendment noted above states, "Austin to issue schedule." That it is to issue the schedule suggests that Young had not been provided a project schedule at the time the contract was issued, notwithstanding the fact that the subcontract requires Young to coordinate its work with Austin's Schedule. *See, e.g.,* ¶ 7.1.4.

Despite the inclusion of the foregoing terms, it is clear that the subcontracts contain no provisions governing the phasing and sequencing of Young's work Young contends that phasing and sequencing were

6

the topic of oral and written discussions with Austin either prior to or concurrent with the execution of the subcontracts. Young further alleges that phasing and sequencing was important to its bids and that it relied on the phasing and sequencing which Austin represented to it in making its decision to bid and in bidding on the project; Young alleges that Austin misrepresented its intent to comply with the phasing and sequencing of the work to be performed by Austin.

The court concludes that evidence of the parties' agreement with regard to phasing and sequencing of Young's work cannot be inconsistent with the terms of the subcontract because the subcontract does not address this issue. Although it does address the overall schedule of the work, Austin had not yet provided a project schedule at the time the subcontracts were executed, and it agreed to do so in the amendment to the subcontracts. Even if the phasing and sequencing schedule which Young contends was the agreement of the parties conflicts in some manner with the terms of the subcontracts, evidence of that agreement would be admissible as evidence of Young's claim that Austin misrepresented its intent with regard to phasing and sequencing. Therefore, the evidence would qualify for admission under the recognized exception to the parol evidence rule where allegations of fraud, misrepresentation or mistake are asserted. *See, e.g.,* First Natl. Bank in Durant, 54 P. 3d at 104. To the extent that the evidence regarding phasing and sequencing is offered for that purpose, Austin's motion in limine is denied.

Young also argues that this evidence is outside the scope of the parol evidence rule because the written subcontract does not contain the entire agreement of the parties with respect to phasing and sequencing and the proposed evidence does not vary the terms of the written subcontract. Young cites Bleakley v. Bowlby, 557 P. 2d 894, 896-97 (Okla. 1976) in support of this argument. While Bleakley contains the legal statement on which Young relies, the court notes that it is a decision involving a conjoint will, and relates to the

7

admissibility of an oral agreement regarding the parties' intentions regarding the disposition of property upon the death of the survivor. 557 P. 2d 894, 896-98. The parties do not cite any authority applying this rule in a traditional contract or written agreement other than a will, and the court has not located such authority. If Young intends to offer the evidence at issue to show that the subcontracts do not represent the complete agreement of the parties, the court will require additional legal authority and argument before determining its admissibility for that purpose. Young's intent in this regard shall be made by written notification to the court and opposing counsel and, if it seeks to use the evidence for this purpose, its notification must be accompanied by a legal brief with supporting authority. Austin will, of course, be given an opportunity to respond. If Young intends to proceed with the evidence for this purpose, its notification and brief must be filed no later than November 1, 2005; Austin's response will be filed no later than November 15, 2005.

For the foregoing reasons, Austin's motion in limine [Doc. No. 66] is GRANTED in part and DENIED in part. It is granted to the extent that the evidence purports to support an oral agreement contrary to the provisions of the subcontract regarding the work of other subcontractors. It is denied to the extent that the evidence is offered to show misrepresentations by Austin regarding the planned phasing and sequencing of Young's subcontract work.

IT IS SO ORDERED this __6th__ day of October, 2005.

\[signature\]

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE